**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHUONG LAM, | : | CIVIL NO. 3:11-CV- 1903 |
| | : | |
| Petitioner, | : | (Judge Kosik) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| H.L. HUFFORD, | : | |
| | : | |
| Respondent. | : | |

**REPORT AND RECOMMENDATION**

**I.    Introduction**

In this federal habeas corpus petition, the petitioner demands that we assess the fairness of a prison decision denying Lam an opportunity to participate in a Residential Drug Abuse Program (RDAP).  Having conducted this review, for the reasons set forth below it is recommended that this petition be denied since a review of the merits of Lam's claims reveals that the decisions made by prison officials in his case comported with the requirements prescribed by law, and fell within the broad discretion conferred upon these officials by law.  Therefore, it is recommended that this petition be denied.

1

## II.   Statement of Facts and of the Case

### A.   Lam's RDAP Program Eligibility Determination

The pertinent facts can be simply stated:  The petitioner in this case, Chuong Lam, is currently serving a 72-month sentence imposed on October 30, 2008, by the United States District Court for the Eastern District of Pennsylvania following Lam's conviction on charges of conspiracy to distribute MDMA and distribution of MDMA. (Doc. 6, McCluskey Decl. Ex. A ¶ 3; Judgment in a Criminal Case, Attach. 1 to Ex. A).  At the time of his sentencing, the sentencing court recommended to the Bureau of Prisons that Lam be placed in a minimum security level institution and be given the opportunity to participate in a 500 hour comprehensive drug treatment program. (Id.)

Lam is currently confined at the Federal Correctional Institution, Schuylkill, where he has been incarcerated since January 15, 2009. (Id. ¶ 4; BOP SENTRY Report, Inmate History Admission-Release, Attach. 3 to Ex. A).  Shortly after Lam's January 15, 2009, arrival at Schuylkill, on January 22, 2009, he underwent an intake screening with Psychology Services. (Id., McCluskey Decl., Ex.A ¶ 5; Psychology Data System, Intake Screening Attach. 4 to Ex. A).  This screening was intended, in part, to assess Lam's suitability for various prison drug treatment programs.  At the time of this intake screening, Lam did not present as a suitable priority candidate for the residential drug abuse program, since it was noted that Lam did not report a history

of substance abuse and stated that he had no interest in participating in any programs or treatment. (Id.)   Therefore, the Chief Psychologist did not recommend any programs or treatment for Lam, who had denied a need for such care. (Id.)

Two years later, on March 4, 2011, a second assessment of Lam's suitability for these programs was conducted when  Lam was screened for the RDAP program  by the Drug Treatment Specialist at Schuylkill. (Id. ¶ 6.)  Once again, Lam's personal history and circumstances cautioned against given priority in this limited program to this specific inmate.  Thus, it was noted that Lam's Pre-Sentence Investigation Report (PSI) stated that, while Lam had experimented with MDMA (ecstasy) on several occasion , he had never developed any addictions. (Id.; Redacted Excerpt from PSI ,Attach. 5 to Ex. A).  It was further noted that Lam's English proficiency would have to be evaluated to determine his appropriateness for participating in RDAP, a program with an extensive educational component which involves training conducted in English. (Id.; Psychology Data System, RDAP Screening Summary, Attach. 6 to Ex. A).

On April 8, 2011, the Drug Abuse Coordinator interviewed Lam to determine his qualification for the RDAP.( Id. ¶ 7.)  At that time, Lam was diagnosed with a past history abuse of alcohol and marijuana, but was not found to suffer from any drug dependence. (Id.)  These findings were consistent with the drug and alcohol history

3

reported by Lam in his intake interview, as well as the finding of Lam's pre-sentence report.  Therefore, Lam was not diagnosed with any type of significant substance dependence, and was found not to be qualified for admission into the RDAP. (Id.)  In addition, it was noted that Lam had significant difficulty reading and writing in English, another consideration which limited his ability to benefit from this educational program which is conducted in English and requires English language proficiency. ( Id.; Psychology Data System, Diagnostic Interview and Notice of RDAP Qualification Form , Attach. 7 to Ex. A).

On April 25, 2011, Lam was informed of the outcome of this RDAP assessment when he was provided with a written response to his "Inmate Request to Staff," detailing the reasons why he was not eligible for the RDAP.( Id. ¶ 8; Inmate Request to Staff and Response, Attach. 8 to Ex. A).  In this document, it was noted that the criteria necessary for admission into the RDAP were contained in BOP Program Statement 5330.11, Psychology Treatment Programs, Chapter 2.5.( Id.)  Lam was informed that according to Chapter 2.5.1 (b), inmates must meet all of the following criteria:  1) inmates must have a verifiable substance abuse disorder;  2) inmates must sign an agreement acknowledging program responsibility; and , 3) when beginning the program, the inmate must be able to complete all three components described in paragraph (a) of this section.(Id.; P.S. 5330.11, Chapter 2, pp. 8-9 , Attach. 9 to Ex.

A).  In determining whether the inmate meets a verifiable substance abuse disorder, the policy explained that Psychology staff seek independent verification from collateral documentation including the pre-sentence report. (Id.)  In Lam's case, an evaluation of all of the available evidence revealed that Lam did not face a severe drug dependency of this type which would warrant enrollment in the residential drug abuse program.

### B.   RDAP Program Admission Criteria

The Bureau of Prisons made these judgments in Lam's case against a statutory and regulatory backdrop of prison programs designed to aid inmates with severe drug abuse problems.  As part of this statutory scheme, 18 U.S.C. § 3621 directs the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b).  Under 18 U.S.C. § 3621, eligible prisoners are able to participate in substance abuse programming and treatment available while incarcerated in federal institutions. 18 U.S.C. § 3621(b)(5), (e).  An inmate may be "eligible" for a program such as the RDAP if he is (1) "determined by the Bureau of Prisons to have a substance abuse problem," and, (2) "willing to participate in a residential substance abuse treatment program." 18 U.S.C. § 3621(e)(5)(B).

In accordance with this statutory requirement, the Bureau of Prisons has published RDAP program rules in 28 C.F.R. § 550.50, et seq., and in BOP Program Statement 5330.11, entitled Psychology Treatment Programs. (Doc. 6, McCluskey Decl. Ex. A; Program Statement 5330.11, Psychology Treatment Programs, Chapter 2, Attach. 9 to Ex. A). Under these program rules, in order to assess if an inmate has a verifiable documented drug abuse problem, drug abuse program staff must first determine if the inmate has a substance abuse disorder by conducting the RDAP Eligibility Interview and by reviewing all pertinent documents in the inmate's central file to corroborate self-reported information. (Id. § 2.5.8.) Additionally, there must be verification in the pre-sentence investigation report or other similar documents in the central file which supports the diagnosis. (Id.)

As "an incentive . . . to draw into treatment many inmates who may otherwise not be willing to undergo a difficult and painful treatment program," Congress allowed for a potential one-year sentence reduction upon successful completion of the RDAP, at the discretion of prison officials. 18 U.S.C. § 3621(e)(2)(A), (B). Indeed, the incentive provision in § 3621 states as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B)(emphasis added).

Because space in these programs is limited, the Bureau of Prisons as a matter of policy and regulation, sets several prerequisites for admission to RDAP programs. First, the Bureau of Prisons limits program participation to inmates with well-documented histories of drug abuse, and typically looks to the inmates' pre-sentence report for documentation of long-standing substance abuse issues.   In addition, because of the prolonged nature of the RDAP program, participation in the program is typically restricted to inmates who have undischarged sentences of 24 months or more.

## C.    Lam's Habeas Petition

Dissatisfied with the prison decision not to enrol him in this program, on October 17, 2011, Lam filed this petition for writ of habeas corpus. (Doc. 1)  In his petition Lam challenges the fairness of this prison decision denying Lam an opportunity to participate in a Residential Drug Abuse Program (RDAP).  These issues have been fully briefed by the parties (Docs. 1 and 6) and are now ripe for disposition. For the reasons set forth below, it is recommended that the petition be denied.

### III.   Discussion

### A.   This Petition Fails on Its Merits Since Lam May Not Successfully Challenge the Decision to Deny Him Enrollment in the RDAP Program In This Petition

In this petition Lam challenges the decision of prison officials to refrain from enrolling him in a prison Residential Drug Abuse Program (RDAP).  Lam's habeas corpus challenge to this decision not to enroll him in the RDAP program fails on its merits.  As we have noted, this particular petition arises in the context of a prison program designed to aid inmates with severe drug abuse problems.  As part of this statutory scheme, 18 U.S.C. § 3621directs the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b).  Under  18 U.S.C. § 3621, eligible prisoners are able to participate in substance abuse programming and treatment available while incarcerated in federal institutions. 18 U.S.C. § 3621(b)(5), (e).  As "an incentive . . . to draw into treatment many inmates who may otherwise not be willing to undergo a difficult and painful treatment program," Congress allowed for a potential one-year sentence reduction upon successful completion of the RDAP, at the discretion of prison officials. 18 U.S.C. § 3621(e)(2)(A), (B).  The incentive provision in § 3621 states as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C.§ 3621(e)(2)(B)(emphasis added).

Yet, plainly enrollment in this program, and receipt of these benefits, is something consigned to the sound discretion of the Bureau of Prisons. Because space in these programs is limited, the Bureau of Prisons as a matter of policy and regulation, sets several prerequisites for admission to RDAP programs. First, the Bureau of Prisons limits program participation to inmates with well-documented histories of drug abuse, and typically looks to the inmates' pre-sentence report for documentation of long-standing substance abuse issues.

Therefore, as a threshold matter, Lam's petition fails for a simple, fundamental reason. Inmates, like Lam, simply do not have a protected liberty interest in early release under 18 U.S.C. § 3621(e). See Lopez, 531 U.S. at 241 ("When an eligible prisoner successfully completes drug treatment, the Bureau thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."); see also Beckley v. Miner, 125 F. App'x 385 (3d Cir. 2005) (holding courts lack habeas corpus jurisdiction under 28 U.S.C. § 2241 to order the transfer of an inmate to a facility offering an RDAP, and emphasizing that the

discretionary nature of the sentence reduction available under 18 U.S.C. § 3621(e) ). Thus, 18 U.S.C § 3621(e)(2)(B) confers upon the BOP discretion to reduce an inmate's sentence, but it does not mandate such a reduction, and consequently Lam did not have a fundamental right to participate in an RDAP, let alone to receive sentence reduction upon his successful completion of the program.

Furthermore, in Lam's case, prison officials determined that he did not qualify for the RDAP program because he denied drug addiction, and his personal history did not reveal the type of severe drug dependency that this program was designed to address. Moreover, prison officials also found that Lam's lack of English proficiency was an impediment to successful completion of this particular educational program.

On these undisputed facts, Lam's habeas claims relating to enrollment in this program are without merit. Indeed, we note that claims, like those made by Lam, challenging RDAP enrollment decisions in habeas corpus petitions, while frequently made, are rarely embraced by the courts. <u>Giannini v. Federal Bureau of Prisons</u>, No. 06-1166, 2010 WL 1427318 (D. Minn. Feb. 12, 2010)(collecting cases). Instead, noting the broad language of the statute in terms of the discretion of prison officials in making decisions regarding enrollment in the RDAP program, courts have held that: "There is no other language in the statute addressing the eligibility of prisoners for participation in RDAP, thus suggesting that *Congress has granted BOP broad*

*discretion in administering RDAP*. Cf. Lopez v. Davis, 531 U.S. 230 (2001) (upholding BOP regulation that categorically excludes from early release consideration those RDAP participants who had possessed a firearm in connection with a nonviolent offense because statute limits such consideration to "prisoner[s] convicted of ... nonviolent offense[s]"). Goren v. Apker. No. 05-9006,  2006 WL 1062904, *5 (S.D.N.Y. April 20, 2006)(emphasis added).  Therefore, reasoning that "there is no constitutional right to rehabilitation. See Marshall v. United States, 414 U.S. 417 (1974)(in context of drug addiction, there is no fundamental right to rehabilitation after conviction) [courts have held that a] Petitioner cannot demonstrate a violation of his constitutional rights by the conduct of the BOP [when making enrollment decisions in the RDAP program]." Kokoski v. Felts, 06-849,  2007 WL 2821085, *6 (S.D.W.Va. Sept. 27, 2007).  Instead, it has been consistently held that in the absence of a showing that the Bureau of Prisons' decision was "arbitrary, capricious, or an abuse of discretion", Wells v. Rivera, No. 06-137, 2007 WL 4219002, *8 (N.D.Fla. Nov. 28, 2007), or "[a]bsent an allegation that the BOP violated established federal law, the United States Constitution, or exceeded the its statutory authority in making the determination that Petitioner was ineligible for RDAP, the Court does not have jurisdiction to review Petitioner's claim." Johnston v. Thomas,  2010 WL 2574090, *6 (D.Or. June 24, 2010).

Lam has made no such showing here, nor can he.  Quite the contrary, the evidence reveals that the decision to refrain from enrolling Lam in the RDAP program was a discretionary one based upon valid and facially neutral factors, factors which indicated that Lam did not need and would not benefit from this program.  Since this decision is not "arbitrary, capricious, or an abuse of discretion", Wells v. Rivera, No. 06-137, 2007 WL 4219002, *8 (N.D.Fla. Nov. 28, 2007), and did not " violate[] established federal law, the United States Constitution, or exceed[] [the Bureau of Prisons']s statutory authority in making the determination that Petitioner was ineligible for RDAP, the Court does not have jurisdiction to review Petitioner's claim." Johnston v. Thomas,  2010 WL 2574090, 6 (D.Or. June 24, 2010).  Therefore, this claim should also be denied.

Nor can Lam sustain a constitutional challenge to this RDAP program placement decision based solely on the fact that prison officials also considered his English proficiency when making these placement decisions.  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws, U.S. Const. amend. XIV, § 1, and the Due Process Clause of the Fifth Amendment "incorporates the principles of equal protection and thus protects against discriminatory legislative classifications by the federal government."  United States v. Phelps, 17 F.3d 1334,

1343 n.12 (10th Cir. 1994).  The Equal Protection Clause prohibits the government from treating similarly situated individuals differently.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  The clause does not, however, require "things which are different in fact or opinion to be treated in law as though they were the same."  <u>Plyler v. Doe</u>, 457 U.S. 202, 216 (1982) (quoting <u>Tigner v. Texas</u>, 310 U.S. 141, 147 (1940)).  In other words, the Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'"  <u>Artway v. Attorney General of New Jersey</u>, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting <u>City of Cleburne</u>, 473 U.S. at 439).  Thus, a petitioner asserting a right to habeas relief based upon an alleged equal protection violation must "allege and prove that [he] received different treatment from other similarly situated individuals or groups."  <u>Johnson v. Horn</u>, 150 F.3d 276, 284 (3d Cir. 1998) (citation omitted).  Furthermore, "if a law neither burdens a fundamental right nor targets a suspect class, [the court] will uphold the legislative classification so long as it bears a rational relation to some legitimate end."  <u>Romer v. Evans</u>, 517 U.S. 620, 631 (1996).  However, classifications involving suspect or quasi-suspect classes, or impacting certain fundamental constitutional rights, are subject to heightened scrutiny.  <u>City of Cleburne</u>, 473 U.S. at 439.

While courts must remain alert to the possibility that "proficiency in a particular language, like skin color, [c]ould be treated as a surrogate for race under an equal protection analysis," Hernandez v. New York, 500 U.S. 352, 354 (1991), it is also well understood that language proficiency is often a valid, relevant consideration in a host of settings where decisions must be made regarding availability of programs and services. See, e.g., Bouton v. BMW of North America, Inc., 29 F.3d 103 (3d Cir. 1994)(hiring based upon language proficiency); Pemberthy v. Beyer, 19 F.3d 857 (3d Cir. 1994)(jury selection, exercise of peremptory challenges based upon English proficiency).  Therefore, courts have rejected Equal Protection arguments, like those made by Lam here, that are based upon the use of language proficiency as a criteria for making decisions regarding access to programs and services, where proficiency in English is rationally related to the enjoyment of these programs, or providing of services. Id.

Indeed, courts which have examined this precise issue have upheld the Bureau of Prisons language proficiency requirements for the RDAP program, noting that inmates' "suggestion that the BOP is discriminating against [them] because [they are] prisoner[s] who lacks English proficiency fails because neither [t]his status as a prisoner nor [t]his lack of English proficiency is a protected class. See Mumid, 618 F.3d at 789; Soberal–Perez, 717 F.2d at 41; Olagues, 770 F.2d at 791; Cook, 208 F.3d

14

at 1322–23; Nyberg, 290 Fed.Appx. at 211. Santiago-Lebron v. Florida Parole Comm'n, 767 F.Supp.2d 1340, 1350 (S.D.Fla. 2011).  Similarly, it is recognized that this language proficiency requirements serves a valid end: "A legitimate government purpose for providing RDAP programs in English is to conserve BOP's limited financial resources and provide effective drug treatment services to the greatest number of eligible inmates.  A rational basis exists to believe that providing classes in English, and eliminating duplicative classes in other languages, would further a budgetary purpose.  This goal also harmonizes with the mandatory functional literacy requirement which mandates ESL classes for non-English speaking inmates. 18 U.S.C. § 3624(f)(4)." Id.  Therefore, courts, see e.g., Banks v. Sessions, No. 10-141, 2011 WL 6749029, (S.D. Miss. Dec. 22, 0211); Santiago-Lebron v. Florida Parole Comm'n, 767 F. Supp. 2d 1340 (S.D.Fla. 2011), including this court, see Rosario-Diaz v. Bledsoe, No. 10-1860, (M.D. Pa. July 12, 2011),(Kosik J.), have consistently held that this language proficiency requirement withstands constitutional scrutiny as a legitimate measure which is rationally related to valid governmental interests.

Nor can Lam rely upon this Court's mandamus jurisdiction to obtain relief in this case.  The writ of mandamus is an ancient form of common law judicial relief, a request for a court order compelling a public official to perform some legally

mandated duty.   The power of federal courts to issue writs of mandamus is now

defined in a federal statute, 28 U.S.C. § 1361, which provides that:

> The district courts shall have original jurisdiction of any action in the
> nature of mandamus to compel an officer or employee of the United
> States or any agency thereof to perform a duty owed to the plaintiff.

28 U.S.C. § 1361.

Writs of mandamus compelling government officials to take specific actions are

extraordinary forms of relief, which must comply with demanding legal standards.

Thus, it is well-settled that "The writ is a drastic remedy that 'is seldom issued and its

use is discouraged.'" In re Patenaude, 210 F.3d 135, 140 (3d Cir. 2000) (quoting

Lusardi v. Lechner, 855 F.2d 1062, 1069 (3d Cir. 1988)).   Thus, as a general rule:

> There are two prerequisites to issuing a writ of mandamus. [Petitioners]
> must show that (1) they have no other adequate means to attain their
> desired relief; and (2) their right to the writ is clear and indisputable. See
> In re Patenaude, 210 F.3d 135, 141 (3d Cir.2000); Aerosource, Inc. v.
> Slater, 142 F.3d 572, 582 (3d. 1988).

Hinkel v. England, 349 F.3d 162, 164 (3d Cir. 2003).

Moreover, "[m]andamus is an extraordinary remedy that can only be granted where

a legal duty 'is positively commanded and so plainly prescribed as to be free from

doubt.' " Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93

F.3d 103, 112 (3d Cir.1996) (quoting Harmon Cove Condominium Ass'n, Inc. v.

<u>Marsh</u>, 815 F.2d 949, 951 (3d Cir.1987)). <u>See</u> <u>also</u> <u>Ararat v. District Director, ICE</u>, 176 F. App'x 343 (3d Cir. 2006).  Therefore:

> Mandamus "is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." <u>Heckler v. Ringer</u>, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (discussing the common-law writ of mandamus, as codified in 28 U.S.C. § 1361). <u>See also</u> <u>Stehney</u>, 101 F.3d at 934 (mandamus relief is a drastic remedy only to be invoked in extraordinary circumstances).

<u>Stanley v. Hogsten</u> 277 F. App'x 180, 181(3d Cir.  2008).

As one court has aptly observed when describing the precise and exacting standards which must be met when a petitioner invokes the writ of mandamus:

> The remedy of mandamus "is a drastic one, to be invoked only in extraordinary circumstances." <u>Allied Chemical Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 34,(1980). Only "exceptional circumstances amounting to a judicial 'usurpation of power' " will justify issuance of the writ. <u>Gulfstream Aerospace Corp. v. Mayacamas Corp.</u>, 485 U.S. 271, 289 (1988) (quoting <u>Will v. United States</u>, 389 U.S. 90, 95(1967)); <u>see also</u> <u>In re Leeds</u>, 951 F.2d 1323, 1323 (D.C.Cir.1991). Mandamus is available only if: "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." <u>In re Medicare Reimbursement Litigation</u>, 414 F.3d 7, 10 (D.C.Cir.2005) (quoting <u>Power v. Barnhart</u>, 292 F.3d 781, 784 (D.C.Cir.2002)); <u>see also</u> <u>Banks v. Office of Senate Sergeant-At-Arms and Doorkeeper of the United States Senate</u>, 471 F.3d 1341, 1350 (D.C.Cir.2006) (concluding that the extraordinary remedy of mandamus need not issue in a case arising under the Congressional Accountability Act where the issue could be addressed by an appeal from a final judgment). The party seeking mandamus "has the burden of showing that 'its right to issuance of the writ is clear and indisputable.' " <u>Power v.</u>

> Barnhart, 292 F.3d at 784 (quoting Northern States Power Co. v. U.S. Dep't of Energy, 128 F.3d 754, 758 (D.C.Cir.1997)). Where the action petitioner seeks to compel is discretionary, petitioner has no clear right to relief and mandamus therefore is not an appropriate remedy. See, e.g., Heckler v. Ringer, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984); Weber v. United States, 209 F.3d at 760 ("[M]andamus is proper only when an agency has a clearly established duty to act.").

Carson v. U.S. Office of Special Counsel, 534 F. Supp. 2d 103, 105 (D.D.C. 2008).

In the past, petitioners, like Lam, have frequently turned to the writ of mandamus to try to compel components of the United States Department of Justice to take some specific action.  These petitions have been many and varied in their forms, embracing wildly diverse disputes, but one consistent theme throughout these cases has been that the courts rarely such embrace mandamus requests. See e.g., Priskanin v. Doe, 349 F. App'x 689 (3d Cir. 2009)(denying mandamus request that FBI protect former alleged informant); Stanley v. Hogsten, 277 F. App'x 180, 181(3d Cir.2008) (denying federal inmate mandamus request for law book);  Ararat v. District Director, ICE,  176 F. App'x 343 (3d Cir. 2006)(denying prisoner mandamus request to remove detainer); Beckley v. Miner, 125 F. App'x 385 (2d Cir. 2005)(denying mandamus request for prison transfer); Leonhard v. Mitchell, 473 F.2d 709 (2d Cir. 1973)(denying mandamus request for disclosure of whereabouts of witness protection program witness); Sloan v. Troung, 573 F. Supp. 2d 823 (S.D.N.Y. 2008)(denying mandamus request for Department of Justice to intervene in Chess Board election);

Saini v. Heinauer, 552 F. Supp. 2d 974 (D.Neb. 2008)(denying mandamus request to order FBI to expedite fingerprint processing of petitioner, an applicant for naturalization); Carson v. U.S. Office of Special Counsel, 534 F. Supp. 2d 103,105 (D.D.C.2008) (denying mandamus petition to compel the Office of Special Counsel to prepare and produce a report).

These cases, which consistently decline to apply the drastic and extraordinary remedy of mandamus, all recognize that the work of the Department of Justice routinely entails the exercise of discretion by government officials.   Since the decisions made by Department of Justice officials often entail significant exercises of discretion, it rarely can be said that these judgments involve such "a clear nondiscretionary duty," Stanley v. Hogsten 277 F. App'x at 181, that mandamus may lie compelling some specific form of governmental action.   Similarly, federal courts have rarely found that a writ of mandamus is the proper legal prescription for dictating to prison officials the manner in which they should provide services or care to inmates. See e.g., Miller v. Lappin, No. 09-12, 2009 WL 166873 (W.D. Va. Jan. 26, 2009)(denying mandamus); Barnhill v. Cherry, No. 06-922, 2008 WL 759322 (M.D. Fla. March 20, 2008)(denying mandamus); United States v. McAllister, 969 F. Supp. 1200 (D. Minn. 1997)(denying mandamus).

In this case, Lam's mandamus petition invites this Court, in the guise of a mandamus action, to intrude into the discretionary details of prison management and order correctional officials to provide this inmate with admission into a drug program that the prison has determined does not meet his needs.  Yet, a writ of mandamus may only issue if the plaintiff has a clear right to relief, the defendant has a clear duty to act, and "can only be granted where a legal duty 'is positively commanded and so plainly prescribed as to be free from doubt.'" Appalachian States Low-Level Radioactive Waste Comm'n v. O'Leary, 93 F.3d 103, 112 (3d Cir. 1996).  Therefore, inherent in a request for mandamus is "a  showing [by the moving party] that 'its right to issuance of the writ is clear and indisputable.'  Where the action petitioner seeks to compel is discretionary, petitioner has no clear right to relief and mandamus therefore is not an appropriate remedy." Carson v. U.S. Office of Special Counsel, 534 F.Supp.2d 103, 105 (D.D.C. 2008).  This basic tenet of mandamus jurisdiction, that mandamus does not extend to discretionary decision-making, is fatal here, since plainly enrollment in this program, and receipt of these benefits, is something consigned to the sound discretion of the Bureau of Prisons.  As such, this discretionary decision-making is simply beyond the reach of mandamus.

**IV.**   <u>**Recommendation**</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that Lam's petition for a writ of habeas corpus (Doc. 1) be DENIED and that a certificate of appealability should not issue.

The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations  made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 13th day of February 2012.

<u>*S/Martin C.  Carlson*</u>
Martin C. Carlson
United States Magistrate Judge
